J2SHORTESS, Judge.
This case arises out of a rear-end collision on O’Neal Lane in Baton Rouge. While stopped in traffic, Doreva B. Deason (Dea-son) was struck from behind by Jamie Cochran Phillips on April 5, 1989. Deason and her husband, Kenneth E. Deason, (plaintiffs) thereafter sued Allstate Insurance Company (defendant) under a policy they maintained which provided underinsured/uninsured motorist coverage. A jury returned a verdict finding Phillips was solely at fault in causing the accident and was uninsured. The jury awarded $500.00 for physical pain and suffering, $500.00 for mental pain and suffering, zero for disability, $5,000.00 for lost past income, and $2,400.00 for past medical expenses. No award was given for loss of consortium. Plaintiffs appealed.
At trial, plaintiffs claimed the multitude of health problems from which Deason suffered were the result of the disease systemic lupus erythematosus (lupus).[1] Plaintiffs contend the trauma of the accident caused her latent lupus to become symptomatic and the damages awarded for Deason’s physical and mental pain and suffering, lost past wages, and past medical expenses were abusively low.[2] Plaintiffs also claim the jury erred in failing to award damages for loss of consortium.
The standard of appellate review of factual findings is a two-part test: 1) the appellate court must find from the record there is a reasonable factual basis for the finding ofjjjthe trial court, and 2) the appellate court must further determine the record establishes the finding is not clearly wrong (manifestly erroneous). Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Factual findings should not be reversed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). If the trial court’s or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Consequently, when there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Housley v. Cerise, 579 So.2d 973, 976 (La.1991); Sistler, 558 So.2d at 1112.
The record reflects the following testimony was adduced at trial.
Deason testified Dr. Herbert Dyer told her in 1980 she had the beginnings of an autoimmune disease. She saw Dr. Dyer again in May 1988. Based on her symptoms, he could *448 not specifically diagnose lupus and felt degenerative arthritis was the appropriate diagnosis.
She began seeing Dr. William Earl Thornton, a psychiatrist in Slidell, in November 1988. Initially, she consulted Thornton for marital counseling. Because Thornton had treated her recently, she went back to him two days after the accident. Her mother-in-law drove from Baton Rouge to his Slidell office while Deason lay down on the back seat. She sustained a bruised chest, and a swollen knee and ankle in the accident. The next day she felt pain in her back, shoulder, neck, arm, and chest. She also was having trouble getting out of bed, in and out of chairs, and had headaches. She testified she was completely incapacitated for six weeks after the accident but resumed activities on a limited basis after this period.
|4She stated Thornton advised her after the accident she may have lupus. She insisted she had not been diagnosed with lupus until after the accident. However, on cross-examination she confirmed Thornton’s opinion was based in part on her prior medical records from Dyer and admitted she experienced lupus symptoms as far back as the 1970’s.
She stated she suffered from gastrointestinal problems, lesions, rashes, hair loss, and swelling after the accident but not before. However, she admitted she took steroids, particularly the medications Medrol and Prednisone, before and after the accident and some of her symptoms were side effects of the medications.
Thornton testified he is a medical doctor and has always specialized in psychiatry. He is the full-time medical director of a psychiatric hospital in Slidell. He sees a small number of patients in his private practice and treats some for general health problems. He has been on the board of directors of the Lupus Foundation and has treated lupus patients in the past, primarily in helping them to live with the illness and its physical manifestations.
Thornton’s initial contact with Deason was for counseling, but he became more centered on her physical complaints after his initial session. He stated Deason initially complained of chronic low back and hip pain and joint pain which increased when she was stressed or fatigued. He hospitalized her for depression in November 1988. At this time, he prescribed a corticosteroid medication, Medrol, to see if it would help her joint pain. She responded well, and he felt at the time she was predisposed to lupus based on her response to Medrol, her family history, and the vagueness and migratory nature of her symptoms. When Thornton saw Deason two days after the accident, he observed multiple bruises and recorded that she described symptoms “consistent with what we often refer to as a whiplash injury.” He recorded her Igcomplaints of cervical, high neck and shoulder pain, muscle spasms in both legs and arms, and blurred vision. He prescribed a cervical collar, bed rest, an anti-inflammatory analgesic, and physical therapy. Her dosage of Medrol was high at this time, and he agreed the medication may have been causing some of her acute symptoms. However, it was his opinion Deason suffered acute injury as a result of the accident.
In May 1989, Thornton was concerned with Deason’s poor response to his recommended treatment after the accident. He became concerned the accident may have aggravated what he already suspected was lupus. He ordered an anti-DNA test,[3] which produced positive results. Although he did not make a definitive diagnosis until after the accident, he admitted that two back-to-back screening tests with positive results, her symptoms, her psychological problems, her family history, and her response to Medrol suggested she had lupus before the accident.[4] It was Thornton’s opinion trauma such as a car accident could cause her symptoms to flare *449 up. However, he also said no known cure exists for lupus and “[tjhere is every reason to expect that it has a lot of progressiveness to it that it will get worse as you get older.”
Dr. L. Allen Proctor, a neurologist, testified he saw Deason in April 1989 as a consultation referral from Thornton. He planned to perform a battery of tests but did not do so because of an electrical failure. He saw her in May 1989 and performed a neurological exam but never completed any other testing. His understanding was Thornton had made a diagnosis Rof lupus. The history he obtained from her indicated she had a “longstanding history of pain.” Previous testing by another neurologist, Dr. Will Gladney, showed degenerative changes in her neck, spurring, and pinched nerves in the neck. A “spine film” showed some degenerative changes in the lumbar region and bulging disks. Proctor’s records indicated her complaints of pain were of the same general type after the accident as before it, and it did “not sound to me as if it were dramatically worsened.” His exam did not indicate objective findings of muscle spasms. It was his opinion Deason experienced muscle strain in her lumbar region as a result of the accident. He expressed no opinion on whether physical trauma could make a latent case of lupus become symptomatic.
Proctor stated he preferred a diagnosis of lupus by a rheumatologist, which is a sub-specialty of internal medicine. He also was less comfortable with Thornton’s diagnosis because he did not know Thornton’s credentials, and “when a Baton Rouge resident goes to another city to a non-rheumatologist to get the diagnosis of lupus when the rheumatologist here couldn’t make the diagnosis or wasn’t able to, that bothers me some.” After reviewing Thornton’s credentials, Proctor still expressed the opinion that he “wouldn’t typically be the physician to diagnose lupus.”
Dr. Herbert Dyer, a rheumatologist, testified he first saw Deason in 1980, at which time she complained of having had joint pain for the last seven years. After reviewing several test results, he informed her she may have the beginnings of an autoimmune disease. He did not see her again until May 1988, when she reported the same general symptoms of chronic pain and fatigue. He performed an anti-nuclear antibody test, which produced positive results and again informed her she may have an autoimmune disease. Another screening test also produced a positive result. The anti-nuclear antibody is present in a number of connective tissue diseases, and the ^screening test produces a large number of false positives. Consequently, Dyer did not make a diagnosis of lupus. When he saw her in December 1988, he recorded her opinion she had lupus. He did not feel she had met enough criteria to be diagnosed with lupus, but also felt she was at a point where she could try taking steroids to see if she felt better. It was his professional opinion no evidence indicates physical trauma causes autoimmune diseases like lupus, but mental stress does aggravate it. He also stated he would not defer to a psychiatrist’s diagnosis of lupus. She did not see Dyer again after December 1988, and he could not express any opinion on her condition at the time of the accident.
The medical testimony presented established a reasonable factual basis for finding the car accident did not cause Deason’s autoimmune problems to change from latent to active. Both Thornton and Dyer agreed the medication she was taking may have explained her rashes, photosensitivity, swelling, and lesions. Her past medical history showed degenerative changes in her neck and lumbar regions and a long-standing history of migratory and somewhat vague joint pain and pain in her hips and legs. Unfortunately for plaintiffs, the view that the majority of Deason’s suffering was ongoing and unrelated to the car accident was reasonable and permissible and, therefore, not clearly wrong.
The correct standard for appellate review of a damage award is clear abuse of discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). That discretion is vast and should rarely be disturbed unless it is, in either direction, beyond that which a reasonable trier of fact could assess under the particular circumstances. Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, — U.S. -, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). *450 Plaintiff argues even if the jury award was only for a soft tissue injury, it was abusively low.
IgDeason’s prior medical history showed degenerative changes, spurring, and nerve impingement in her cervical spine, as well as degenerative changes, spurring, and compression in her lumbar spine. Thornton’s testimony and medical records confirm plaintiff suffered from acute distress in her neck and shoulder area consistent with whiplash-type injury. Proctor opined she was not significantly worsened, but may have suffered a muscle strain in her lumbar region. Deason testified she was confined to heir bed for six weeks following the accident and was completely incapacitated.
In view of the entire record, we agree the jury award was abusively low for general damages. The jury may have reasonably found, after hearing all the testimony, Dea-son’s suffering was related only marginally to the accident and was more related to her other health problems. Nevertheless, the testimony and medical documentation demonstrate Deason clearly suffered acute distress as a direct result of the accident, and her other problems, whether a nondescript autoimmune disease or degenerative arthritis, appear to have been exacerbated by the stress of this event. The jury abused its discretion in not compensating Deason adequately for the aggravation of her pre-exist-ing conditions.
If an award is below that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances, we may raise the award only to the lowest amount reasonably within the trier of fact’s discretion. Theriot, 625 So.2d at 1340-1343. We find the lowest amount the jury reasonably could have awarded for physical pain and suffering is $2,500.00 and for mental pain and suffering is $2,500.00.
Plaintiffs also contend the award for lost income should have been higher. Plaintiffs are real estate agents. Both testified Deason was a high producer and the primary wage earner. Plaintiffs’ tax records indicate no loss of commission income following the accident. Deason’s and Thornton’s testimony reasonably establishes Dea-son was confined to bed rest after the accident. This period lasted approximately six weeks. An award of $5,000.00 in lost income was not abusively low in light of the entire record. The award of $2,400.00 for medical expenses also was not abusively low given the implicit factual finding of the jury that the bulk of her treatment was for lupus-related symptoms unrelated to the accident, rather than injuries related to the accident.
Finally, plaintiffs contend the jury erred in failing to make an award for loss of consortium. Whether a plaintiff is entitled to damages for loss of consortium is a factual question for the trial court to decide.
Plaintiffs testified they initially consulted Thornton for marital counseling. Deason’s records from North Shore Psychiatric Hospital, where she spent two weeks in November and December 1988, indicated her husband was abusive and they fought often. Proctor’s records and correspondence concerning Deason’s consultation indicate his opinion her psychological problems “seem to come from problems with her marriage.” In referring the Deasons to Thornton in November 1988, counselor G. Reid Doster reported Kenneth Deason said he had hit his wife in the past and Doreva Deason said she “on many occasions has pulled a gun on Ken and that this happened as late as two days ago.” Kenneth Deason denied any problems in his marriage. He stated the counseling sessions with Thornton helped his marriage become stronger, but “it was in good shape; no problem.” The jury clearly did not find Kenneth Deason was a credible witness. In light of the documentary evidence, the jury’s view Kenneth Deason suffered no loss of consortium caused by the accident was a reasonable permissible view and will not be disturbed.
For the foregoing reasons, the judgment of the trial court is hereby amended to increase the damages for physical liopain and suffering to $2,500.00 and damages for mental pain and suffering to $2,500.00. In all other re *451 spects, the judgment is affirmed. All costs of this appeal are assessed to defendant.
AMENDED, AND AS AMENDED, AFFIRMED.

. Dorland's Illustrated Medical Dictionary, 27th Ed., defines systemic lupus erythematosus as:
a chronic, remitting, relapsing, inflammatory, and often febrile multisystemic disorder of connective tissue ... characterized principally by involvement of the skin, ... joints, kidneys, and serosal membranes.... but it is thought to represent a failure of the regulatory mechanisms of the autoimmune system.... The disorder is marked by a wide variety of abnormalities.

. The juty did not specifically find the accident did not aggravate her lupus; however, this finding is implicit in the damage award.

. This is one of the more sensitive tests for lupus.

. Some of the testimony in the record appears to be an attempt to establish Deason did not have lupus before the accident. Her prior medical history does not support this theory and none of the medical experts who testified suggested a trauma could actually cause the disease. Plaintiffs do not argue on appeal the accident caused the lupus. Their contention is the trauma of the accident caused her previously latent case of lupus to become highly symptomatic.